IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BRUNER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THOMAS G. DART, in his official capacity as Cook County Sheriff, the COOK COUNTY SHERIFF'S OFFICE, COOK COUNTY, ILLINOIS, ANDREW DE FUNIAK, LENA COLON, REBECCA MASI, AND KEVIN THIBO. | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

No. 1:15-cv-04740

## SECOND AMENDED COMPLAINT

By his attorneys, plaintiff Michael Bruner complains as follows against Thomas G. Dart in his official capacity as Cook County Sheriff ("Dart" or the "Sheriff"), the Cook County Sheriff's Office (the "Sheriff's Office"), Cook County, Illinois ("Cook County"), and the above-named individuals (the "Individual Defendants").

1. This is a civil action for damages arising under 42 U.S.C. § 1983 as a result of Defendants' depriving Mr. Bruner of rights secured by the Fourteenth Amendment to the U.S. Constitution.

2. The Court has subject-matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343(3). Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Plaintiff is a citizen of the United States and the State of Illinois.

4. Dart is the Cook County Sheriff and the head of the Sheriff's Office. The Sheriff's Office runs the Cook County Jail (the "Jail") and the Cook County Department of Corrections and employs the Individual Defendants sued in this case who worked as correctional officers at the Cook County Jail during the period of the events complained of ("Correctional Officers").

5. Cook County is an incorporated governmental entity in the State of Illinois and under a January 2011 Inter-Agency Agreement is responsible for providing healthcare to detainees at the Jail under the name "Cermak Health Services of Cook County." Cook County employed the Individual Defendants sued in this case who worked as health officials at the Jail during the period of the events complained of ("Cermak Medical Personnel") and is liable for any judgments related to its agents and employees arising in the course of their employment. 745 ILCS 10/2-302. Cook County also is joined in this action as provided for under *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

6. Kevin Thibo was a Correctional Officer at the Jail and was assigned to work in a part of the Jail's medical facility referred to as "Basement Control." Defendant Thibo was the only Correctional Officer assigned to this area during the period time in which the events complained of took place.

7. The following Individual Defendants were Cermak Medical Personnel during the period of the events complained of: Andrew De Funiak, Lena Colon, and Rebecca Masi.

8. At all relevant times, Dart, the Sheriff's Office, Cook County, and the Individual Defendants acted under color of state law, and the Individual Defendants acted within the scope of their employment.

9. On September 8, 2013, Mr. Bruner was transferred as a pretrial detainee to the Jail after receiving treatment the day before for two broken ribs and a severe infection in his right leg in the emergency department at MacNeal Hospital in Berwyn, Illinois.

10. Mr. Bruner's treatment at MacNeal included bed rest, pain medication, and a course of intravenous antibiotics (among other things).

11. Because Mr. Bruner's condition required ongoing treatment at the time of his transfer from MacNeal to the Cook County Jail, physicians at MacNeal discharged Mr. Bruner with instructions for him to receive comparable treatment going forward.

12. Upon arriving at the Jail, the Individual Defendants received these instructions from MacNeal Hospital. Defendants De Funiak, Colon, and Masi evaluated Mr. Bruner at intake and determined Mr. Bruner was in need of immediate medical treatment.

13. Specifically, Defendant De Funiak prescribed multiple medications, including antibiotics and pain medication, as a part of Mr. Bruner's patient care plan after examining Mr. Bruner at 6:38 p.m. on September 8, 2013.

14. Instead of administering the prescribed treatments, however, the Individual Defendants provided Mr. Bruner no immediate medical treatment, antibiotics, or pain medications at that time.

15. Instead, following his intake examination at the Jail, Mr. Bruner was handcuffed to a wooden bench and left in a part of the Jail's medical facility referred to as "Basement Control" for a period of at least 18 hours. During this time, Mr. Bruner remained handcuffed to the wooden bench without any medical treatment or basic necessities (like adequate bedding or blankets), given the environmental conditions, which were maintained at substantially colder than normal indoor ambient temperatures.

16. While handcuffed to the wooden bench over this 18-hour period, Mr. Bruner begged every Cermak Medical Personnel and Correctional Officer whom he saw to move him and provide appropriate treatment in accordance with the instructions from the physicians at MacNeal and the Jail. His requests were ignored.

17. Mr. Bruner did not begin to receive all of the medications that he had been prescribed during the evening of September 8th by the Jail's own medical professionals (putting aside the prescriptions from MacNeal) until at least 9:00 pm on September 9th, and he received no medication whatsoever for pain during at least the first 18 hours of this period. During this period (the evening of September 8th to 9:00 pm on September 9th), Mr. Bruner was seen by the Defendants De Funiak, Colon, and Masi, yet they failed to ensure that Mr. Bruner received the full complement of medications and other treatment that they knew he had been prescribed.

18. Mr. Bruner had done nothing at the Jail that would warrant, for legitimate penological, medical, or other reasons, his being shackled to a wooden bench for a period of at least 18 hours, particularly given his serious medical condition, need for medical treatment, and ongoing pain and suffering.

19. As a result of being left handcuffed to the bench, Mr. Bruner suffered significant, constant, continuing, and unnecessary physical pain and mental anguish.

20. When Mr. Bruner arrived at the Jail, he was suffering from objectively serious medical conditions (broken ribs and an acute leg infection) requiring immediate and ongoing medical treatment of which the Individual Defendants before, during, and after the 18-hour period in which he was left handcuffed to the bench. Among other things:

      (a)    Mr. Bruner presented the Individual Defendants whom he saw with discharge papers from MacNeal describing his recent treatment, his conditions, and his need for further treatment;

      (b)    Mr. Bruner informed the Individual Defendants whom he saw of his recent treatment at MacNeal, his conditions, and his need for further treatment; and

      (c)    Mr. Bruner's conditions were obvious to any lay person, given that he was in visible pain and had difficulty ambulating (from his rib fractures) and was in visible pain, had difficulty ambulating, had visible swelling, redness, and inflammation of his leg (from his leg infection).

21.    Defendants, including Dart, the Sheriff's Office, and Cook County, were aware that constitutionally inadequate medical care and treatment was occurring at the Jail at the time of Bruner's transfer. For example, in a letter dated July 11, 2008 ("DOJ Letter"), the U.S. Department of Justice advised then Cook County Board President John Stroger of a multitude of constitutional violations at the Jail. With respect to medical care, the DOJ described "the following deficiencies: (1) inadequate medical staffing; (2) inadequate intake screening; (3) inadequate health assessments; (4) inadequate acute care; (5) inadequate chronic care; (6) inadequate emergency care; (7) inadequate record keeping; (8) inadequate medication administration; (9) inadequate management of communicable diseases; (10) inadequate access to medical care; (11) inadequate medical facilities; (12) inadequate dental care; and (13) inadequate quality assurance."

22.    With respect to "inadequate intake screening," the DOJ in this letter stated:

> CCJ fails to adequately identify inmates' urgent and/or ongoing health needs through appropriate intake screening. Adequate

>intake screening is essential for ensuring that inmates are receiving proper care for acute or chronic needs. Generally accepted correctional medical standards require that incoming inmates be screened by staff trained to identify and triage serious medical needs, including drug and alcohol withdrawal, communicable diseases, acute or chronic needs, mental illness, and potential suicide risks. CCJ's intake screening fails to identify such needs and increases the risk of serious harm.

23. The same DOJ Letter stated with respect to the acute care provided at the facility that

>CCJ fails to provide adequate and timely care to inmates with serious or potentially serious acute medical conditions. CCJ's acute care services substantially depart from generally accepted correctional medical care standards. We identified grossly inadequate acute care that led to prolonged suffering and premature deaths of inmates at CCJ. Acute care was so deficient that inmates suffered needlessly because medical staff failed to monitor acute conditions, and failed to timely treat inmates' conditions. We found numerous instances where CCJ's failure to adequately assess and treat inmates likely contributed to preventable deaths, amputation, hospitalization, and unnecessary harm.

24. The same DOJ Letter advised Defendants of the inadequate administration of medication at the Jail, stating "[o]ur investigation also revealed significant delays, errors, and lapses in medication administration, all of which have contributed to needless suffering and inmate hospitalizations."

25. The same DOJ Letter advised Defendants of unacceptable conditions generally in the receiving unit of the jail, noting that "the RCDC is chronically overcrowded, cramped, chaotic, and insufficiently staffed."

26. The same DOJ Letter advised Defendants of deficient grievance processes at the Jail:

>The CCJ sick call process fails to provide adequate access to medical care. CCJ inmates access medical care by completing sick call requests. Although CCJ correctional staff are responsible for

-6-

        collecting sick call request, inmates reportedly made multiple requests before receiving medical care. Our review of medical records confirmed that many inmates made several requests for care before receiving treatment.

27. In addition, the grievance process is a constitutionally deficient administrative process for Mr. Bruner and similarly situated persons to grieve about serious or potentially serious medical problems for the following reasons:

    (a) Blank grievance forms are not readily available for detainees (and none were available in this case while Mr. Bruner was handcuffed to the wooden bench);

    (b) the method to submit a grievance requires a detainee to hand deliver it to a social worker, even though a social worker may infrequently visit a tier (and here never visited Mr. Bruner), leaving a detainee without any written procedure to grieve;

    (c) an employee of Dart or Cook County makes an initial determination whether a detainee grievance proceeds as a "grievance" or a "nongrievance (request);" and

    (d) there is frequently a significant delay between the date a grievance is written and when a detainee receives a response.

28. Dart, the Sheriff's Office, and Cook County were aware of the risks created by their officially authorized or widespread and well-settled practices, as described in the DOJ letter, multiple lawsuits filed against these parties, and other sources. Nevertheless, they failed to take appropriate steps to protect Mr. Bruner by (among other things) failing to stop the practices and failing to promulgate adequate or effective rules or regulations required to remedy the practices.

29. These practices were a moving force behind the deprivation of Mr. Bruner's constitutional rights at issue in this case. Among other things, the deprivation would not have occurred absent the inadequate intake screenings, acute care, administration of medications, conditions in the receiving unit, and grievance process at the Jail.

30. The Individual Defendants failed to provide Mr. Bruner medical care and denied him access to medical care for an objectively serious medical condition, carrying obvious risks of serious harm to his physical and emotional condition, of which they knew, in complete and deliberate disregard for those risks and his serious medical needs.

31. Dart, the Sheriff's Office, and Cook County have wide-spread and well-settled practices of being deliberately indifferent to inmates with serious or potentially serious medical conditions and have a practice of inadequately responding to inmate grievances.

WHEREFORE, Mr. Bruner demands judgment in his favor in an amount to be proven at trial for compensatory damages against all Defendants, for punitive damages against the Individual Defendants, and for an award of costs and attorneys' fees.

Dated: January 11, 2016            */s/ Deborah A. Bone*

                                                  David C. Giles
Deborah A. Bone
SCHIFF HARDIN LLP
233 South Wacker Dr., Suite 6600
Chicago, Illinois 60606
(312) 258-5500 (phone)
(312) 258-5600 (fax)
dgiles@schiffhardin.com
dbone@schiffhardin.com
Attorneys for Michael Bruner

## **CERTIFICATE OF SERVICE**

    I certify that on January 11, 2016 a copy of the foregoing was filed using the ECF system, which constitutes service upon all parties having appeared in the case.

*/s/ Deborah A. Bone*
Deborah A. Bone